UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on September 30, 2004

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 06- |
| | : | |
| v. | : | **VIOLATIONS:** |
| | : | 18 U.S.C. § 371 (Conspiracy) (Count 1) |
| **LORELLE S. DANCE,** | : | 18 U.S.C. § 201(b)(2)(A) (Receipt of |
| | : | Bribes by a Public Official) (Counts 2-11) |
| Defendant. | : | 18 U.S.C. § 2 (Aiding and Abetting) |
| | : | (Counts 2-11) |

# INDICTMENT

The Grand Jury charges that:

## COUNT ONE – CONSPIRACY

A. Introduction

Unless specified otherwise, at all times material to this Indictment:

1. Defendant LORELLE S. DANCE ("DANCE") was employed by the District of Columbia as a business manager for the District of Columbia Public Schools ("DCPS") in Washington, D.C. Part of defendant DANCE's job responsibilities was to procure goods and services for District of Columbia schools, including Moten Elementary, Rudolph Elementary, Ludlow-Taylor Elementary, Walker-Jones Elementary, Hamilton Center, and Bunker Hill Elementary.

2. An individual known to the grand jury, but not named herein ("Individual #1), was employed by DCPS as a principal of an elementary school until late-December of 2002. Part of Individual #1's responsibilities was to manage the use of government-issued DCPS purchase cards and approve requests for the purchase of goods and services by defendant DANCE.

3. Charles Wiggins operated a business known as Wiggins Telecommunications out of his home in Maryland. Wiggins Telecommunications was a computer company which installed and maintained computers. Wiggins, through Wiggins Telecommunications, agreed, through defendant DANCE, to perform computer installation services for DCPS. Wiggins, with the assistance of defendant DANCE, also created a shell company, Motts Sales and Services, through which Wiggins billed DCPS, at the instruction of defendant DANCE, for custodial and computer-related goods and services.

### B. The Conspiracy and its Objects

4. From between in or about September, 2001, until in or about June, 2003, the exact dates being unknown to the grand jury, in the District of Columbia and elsewhere, defendant DANCE, Individual #1, and Charles Wiggins, did knowingly combine, conspire, confederate and agree with each other and others known and unknown to the grand jury, to commit the following offenses against the United States:

(A) to devise a scheme and artifice to defraud DCPS and deprive DCPS of its right to the honest services of defendant DANCE and Individual #1 performed free from deceit, favoritism, bias, enrichment of self and self-dealing, and to obtain money by means of materially false and fraudulent pretenses, representations, promises and material omissions, in violation of 18 U.S.C. §§ 1343 and 1346; and

(B) for Charles Wiggins, directly and indirectly, corruptly to give, offer or promise something of value to public officials, that is, defendant DANCE and Individual #1, with intent to influence their official acts as DCPS officials, and defendant DANCE and Individual #1, directly and indirectly, corruptly to demand, seek, receive or accept something of value personally from Charles

Wiggins, in return for being influenced in the performance of official acts as DCPS officials, in violation of Title 18, United States Code, Section 201(b).

### C. Purposes of the Conspiracy

5. It was a purpose of this conspiracy for defendant DANCE and Individual #1 to enrich themselves by corruptly receiving money from Charles Wiggins, directly and indirectly, in return for approving work for Wiggins and his companies for allegedly providing goods and services to DCPS.

### D. Manner and Means Used to Carry Out the Conspiracy

The conspiracy was carried out through the following manner and means, among others:

6. Charles Wiggins sought business dealings with DCPS.

7. Charles Wiggins, through his company, Wiggins Telecommunications, provided computers and computer installation and maintenance to various DCPS elementary schools, and charged DCPS for equipment and services to the government-issued purchase card belonging to defendant DANCE and others, with the approval of defendant DANCE.

8. Charles Wiggins would often stay in contact with defendant DANCE by telephone, at times from his home in Maryland to defendant DANCE's home in Washington, D.C.

9. Individual #1 directed a DCPS administrative assistant, in the presence of Charles Wiggins, to type invoices for the services allegedly provided by Wiggins Telecommunications to DCPS.

10. Defendant DANCE filled out and signed monthly transaction logs for the DCPS purchase card program fraudulently listing custodial goods and services that she claimed Wiggins Telecommunications had provided when, as defendant DANCE well knew, Wiggins

Telecommunications had not provided such custodial services or products.

11. At the direction of defendant DANCE, Charles Wiggins sometimes submitted duplicate bills to DCPS for charges for the same service.

12. At the direction of defendant DANCE, Charles Wiggins created a shell company called Motts Sales and Services for the sole purpose of funneling money from DCPS to defendant DANCE and Individual #1. Wiggins, with the knowledge of defendant DANCE, applied to the Chief Financial Officer in the District of Columbia for Motts Sales and Services to be an approved vendor. Wiggins received vendor number #1371444727 for the shell company. Wiggins, with the knowledge of defendant DANCE, used that number to receive money from DCPS to shell company Motts Sales and Services, which provided no goods or services to DCPS.

13. Defendant DANCE used her government-issued purchase card to charge more than $300,000 for alleged services and equipment provided by Wiggins Telecommunications.

14. Defendant DANCE used her government-issued purchase card to charge more than $60,000 for alleged services and goods provided by Charles Wiggins through his shell company, Motts Sales and Services.

15. Charles Wiggins provided defendant DANCE with cash, cashier's checks and personal checks made payable to defendant DANCE and personal checks made payable to defendant DANCE's mortgage company from monies he received for the goods and services allegedly provided to DCPS by Wiggins and his companies.

16. Charles Wiggins provided Individual #1 with cashier's checks and personal checks made payable to Individual #1 from monies he received for the goods and services allegedly provided to DCPS by Wiggins and his companies.

17. In exchange for funds kicked back to them by Charles Wiggins, defendant DANCE and Individual #1 approved payments from DCPS to Wiggins Telecommunications and shell company Motts Sales and Services, and ensured continued and lucrative business for Wiggins.

E. <u>Overt Acts of the Conspiracy</u>

18. In furtherance of the conspiracy and to accomplish the objects thereof, defendant DANCE and Individual #1, as well as Charles Wiggins, committed the following overt acts, among others, within the District of Columbia, and elsewhere:

(A) On or about February 28, 2002, defendant DANCE caused to be certified a Monthly Transaction Log for the DCPS Purchase Card Program reporting services that Wiggins Telecommunications had allegedly provided to the Bunker Hill Elementary School.

(B) On or about March 1, 2002, defendant DANCE caused to be certified a Monthly Transaction Log for the DCPS Purchase Card Program reporting services that Wiggins Telecommunications had allegedly provided to the Rudolph Elementary School.

(C) On or about March 28, 2002, defendant DANCE caused to be certified a Monthly Transaction Log for the DCPS Purchase Card Program reporting services that Wiggins Telecommunications had allegedly provided to the Hamilton Center School.

(D) On or about August 30, 2002, defendant DANCE caused to be certified a Monthly Transaction Log for the DCPS Purchase Card Program reporting that Wiggins Telecommunications had provided custodial goods to the Hamilton Center School.

(E) On or about August 30, 2002, defendant DANCE caused to be certified a Monthly Transaction Log for the DCPS Purchase Card Program reporting that Wiggins Telecommunications had provided custodial goods to the Bunker Hill Elementary School.

(F) On or about November 6, 2002, Charles Wiggins caused a personal check for $1,217.00 to be issued from Wiggins' wife's bank account to pay defendant DANCE's mortgage monthly payment.

(G) On or about December 2, 2002, defendant DANCE accepted a cashier's check for $7,000, made payable to defendant DANCE, from or on behalf of Charles Wiggins.

(H) On or about December 3, 2002, defendant DANCE caused to be certified a Monthly Transaction Log for the DCPS Purchase Card Program reporting services that Wiggins Telecommunications and Motts Supplies and Services had allegedly provided to the Ludlow-Taylor Elementary School.

(I) On or about December 4, 2002, defendant DANCE accepted a cashier's check for $4,000, made payable to defendant DANCE, from or on behalf of Charles Wiggins.

(J) On or about December 4, 2002, defendant DANCE caused to be certified a Monthly Transaction Log for the DCPS Purchase Card Program reporting services that Wiggins Telecommunications had allegedly provided to the Hamilton Center School.

(K) On or about December 20, 2002, defendant DANCE accepted a cashier's check for $3,000, made payable to defendant DANCE, from or on behalf of Charles Wiggins.

(L) On or about December 20, 2002, Individual #1 accepted a cashier's check for $5,000, made payable to Individual #1, from or on behalf of Charles Wiggins.

(M) On or about December 23, 2002, Individual #1 accepted a cashier's check for $4,000, made payable to Individual #1, from or on behalf of Charles Wiggins.

(N) On or about January 2, 2003, Charles Wiggins caused a personal check for $2,000.00 to be issued from Wiggins' wife's bank account to pay Individual #1.

(O) On or about January 3, 2003, Charles Wiggins caused a personal check for $2,000.00 to be issued from Wiggins' wife's bank account to pay defendant DANCE.

(P) On or about January 17, 2003, Charles Wiggins caused a check for $900.00 to be issued from Wiggins' wife's bank account to pay defendant DANCE.

(Q) On or about January 31, 2003, Charles Wiggins caused a check for $500.00 to be issued from Wiggins' wife's bank account to pay defendant DANCE.

(R) On or about April 2, 2003, Charles Wiggins caused a check for $1,217.00 to be issued from Wiggins' wife's bank account to pay defendant DANCE's monthly mortgage payment.

(S) On or about April 29, 2003, Charles Wiggins caused a check for $1,158.00 to be issued from Wiggins' wife's bank account to pay defendant DANCE's monthly mortgage payment.

(T) Between on or about September, 2001 and June, 2003, defendant LORELLE DANCE accepted $17,000 in cash from Charles Wiggins.

**(Conspiracy, in Violation of Title 18, United States Code, Section 371)**

**COUNTS TWO THROUGH ELEVEN –
RECEIPT OF BRIBES BY A PUBLIC OFFICIAL**

19. Paragraphs 1-3 of Count One of this Indictment are realleged and expressly incorporated as if set forth in full herein.

20. On or about the date set forth below as to each count, in the District of Columbia and elsewhere, defendant LORELLE S. DANCE ("DANCE"), a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value, that is, the item set forth below, from Charles Wiggins, in return for being influenced in the performance of official acts, to wit, defendant DANCE received and accepted money from Charles Wiggins, as

set forth below, in return for agreeing to approve DCPS work and payments to Wiggins Telecommunications and shell company Motts Sales and Services.

| COUNT | APPROXIMATE DATE OF RECEIPT | THING OF VALUE |
|---|---|---|
| 2 | September 2001 – February 2003 | $17,340.47 cash |
| 3 | November 15, 2002 | $1,217.00 personal check |
| 4 | December 2, 2002 | $7,000.00 cashier's check |
| 5 | December 4, 2002 | $4,000.00 cashier's check |
| 6 | December 20, 2002 | $3,000.00 cashier's check |
| 7 | January 3, 2003 | $2,000.00 personal check |
| 8 | January 17, 2003 | $ 900.00 personal check |
| 9 | January 31, 2003 | $ 500.00 personal check |

| | | |
|---|---|---|
| 10 | April 17, 2003 | $1,217.00 personal check |
| 11 | May 13, 2003 | $1,158.00 personal check |

**(Receipt of a Bribe by a Public Official in violation of Title 18,
United States Code, Sections 201(b)(2)(A) and 2)**

A TRUE BILL



FOREPERSON



ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA