UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 06-046 (JDB) |
| | : | |
| v. | : | |
| | : | |
| **LORELLE S. DANCE,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant Lorelle S. Dance. As will be discussed below, the government moves for a three-level reduction in the offense level for defendant's acceptance of responsibility and then requests a sentence within the resulting Sentencing Guidelines range of 18 to 24 months, deferring to the Court as to the appropriate sentence within that range.

### I. FACTUAL BACKGROUND

On February 21, 2006, an eleven-count indictment was filed against defendant. The indictment charged defendant with conspiracy, under 18 U.S.C. § 371, to commit (1) wire fraud, honest services theory, and (2) receipt of bribes by public officials, as well as substantive counts involving receipt of bribes by a public official, in violation of 18 U.S.C. § 201(b)(2)(A). On April 3, 2006, defendant pled guilty to count one, the conspiracy count, of the indictment. Sentencing is now set before the Court on August 31, 2006, at 9:00 a.m.

The following facts were set forth in the statement of offense filed in this matter and the Presentence Investigation Report ("PSR"), at pages 4-6, ¶ 9-20, both of which were agreed to by the defendant, PSR, at page 6, ¶ 23:

A.  <u>Individuals involved in the conspiracy</u>

At all relevant times during the course of the conspiracy defendant was employed by the District of Columbia as a business manager for the District of Columbia Public Schools ("DCPS") in Washington, D.C.  Part of defendant's job responsibilities was to procure goods and services for District of Columbia schools, including Moten Elementary, Rudolph Elementary, Ludlow-Taylor Elementary, Walker-Jones Elementary, Hamilton Center, and Bunker Hill Elementary.

An individual ("Individual #1) was employed by DCPS as a principal of an elementary school until late-December of 2002.  Part of Individual #1's responsibilities was to manage the use of government-issued DCPS purchase cards and approve requests for the purchase of goods and services by defendant.

Charles Wiggins operated a business known as Wiggins Telecommunications out of his home in Maryland.  Wiggins Telecommunications was a computer company which installed and maintained computers.  Wiggins, through Wiggins Telecommunications, agreed, through defendant, to perform computer installation services for DCPS.  Wiggins also created a shell company, Motts Sales and Services, in the Fall of 2002, through which Wiggins billed DCPS, at the instruction of defendant, for alleged custodial and computer-related goods and services.

B.  <u>Acts during and in furtherance of the conspiracy</u>

At all relevant times, Charles Wiggins sought business dealings with DCPS.  Charles Wiggins, through his company, Wiggins Telecommunications, provided computers and computer installation and maintenance to various DCPS elementary schools, and charged DCPS for equipment and services to the government-issued purchase card belonging to defendant and others, with the approval of defendant.  In furtherance of the conspiracy, Charles Wiggins would often stay in contact

with defendant by telephone, at times from his home in Maryland to defendant's home in Washington, D.C.

Individual #1 directed a DCPS administrative assistant, in the presence of Charles Wiggins, to type invoices for the services allegedly provided by Wiggins Telecommunications to DCPS.

Defendant filled out and signed monthly transaction logs for the DCPS purchase card program fraudulently listing custodial goods and services that she claimed Wiggins Telecommunications had provided when, as defendant well knew, Wiggins Telecommunications had not provided such custodial services or products. Also, at the direction of defendant, Charles Wiggins sometimes submitted duplicate bills to DCPS for charges for the same service.

Defendant used her government-issued purchase card to charge more than $300,000 for alleged services and equipment provided by Wiggins Telecommunications. From in or about the Fall of 2002 until in or about Spring of 2003, defendant also used her government-issued purchase card to charge more than $60,000 for alleged services and goods provided by Charles Wiggins through his shell company, Motts Sales and Services.

Charles Wiggins provided defendant with cash, cashier's checks and personal checks made payable to defendant and personal checks made payable to defendant's mortgage company from monies he received for the goods and services allegedly provided to DCPS by Wiggins and his companies, which payments are set forth below:

| APPROXIMATE DATE OF RECEIPT BY DANCE | THING OF VALUE |
| --- | --- |
| September 2001 – February 2003 | $17,340.47 cash |
| November 15, 2002 | $1,217.00 personal check |
| December 2, 2002 | $7,000.00 cashier's check |
| December 4, 2002 | $4,000.00 cashier's check |

| | |
|---|---|
| December 20, 2002 | $3,000.00 cashier's check |
| January 3, 2003 | $2,000.00 personal check |
| January 17, 2003 | $ 900.00 personal check |
| January 31, 2003 | $ 500.00 personal check |
| April 17, 003 | $1,217.00 personal check |
| May 13, 2003 | $1,158.00 personal check |

Charles Wiggins also provided Individual #1 with cashier's checks and personal checks made payable to Individual #1 from monies he received for the goods and services allegedly provided to DCPS by Wiggins and his companies, which payments are set forth below:

| APPROXIMATE DATE OF RECEIPT BY INDIVIDUAL #1 | THING OF VALUE |
|---|---|
| December 20, 2002 | $5,000.00 cashier's check |
| December 23, 2002 | $4,000.00 cashier's check |
| January 2, 2003 | $2,000.00 personal check |

In exchange for funds kicked back to them by Charles Wiggins, defendant and Individual #1 approved payments from DCPS to Wiggins Telecommunications and shell company Motts Sales and Services, and ensured continued and lucrative business for Wiggins.

## II. UNITED STATES SENTENCING GUIDELINES

The United States Sentencing Guidelines ("USSG"), § 3E1.1, provides for a two-level decrease in a defendant's offense level for acceptance of responsibility, and, upon motion of the government, for a defendant whose level is 16 or greater and who has in a timely manner advised the government of the defendant's intent to plead guilty, an additional one-level decrease. The defendant meets the criteria for a three-level decrease and the government hereby moves that she be given a three-level decrease in her offense level for acceptance of responsibility.

The probation officer believes, and the United States concurs, that the defendant's resulting Total Adjusted Offense Level for the offense is 15, her Criminal History category is I, and her USSG

range is 18 to 24 months. PSR, at page 3, ¶ 3, page 8, ¶ 35 and ¶ 38, and page 17, ¶ 83. Because the applicable guidelines range is in Zone D, defendant is not eligible for probation. *Id.*, at page 18, ¶ 89.

### III. DEFENDANT'S LEVEL OF COOPERATION/ U.S. ATTORNEY'S OFFICE DEPARTURE COMMITTEE

In the plea letter in this case, there is standard language to the effect that defendant agreed to cooperate with the government. Plea Letter, March 2, 2006, at page 3-4, ¶ 5. The government, in return, agreed to advise the Court "of the full nature, extent, and value of the cooperation provided by [defendant] to the government." *Id.*, at page 4, ¶ 8. Pursuant to the obligations in the plea letter, defendant met with representatives of the government on three occasions to provide what information she might have as to misconduct by others. Prior to the guilty plea of defendant, Charles Wiggins had already pled guilty in this matter and his case number is 05-433 (JDB). As to alleged misconduct of any other person, defendant provided no significant information.

Also pursuant to the plea letter, the government agreed to inform the Departure Committee of the United States Attorney's Office for the District of Columbia ("Departure Committee") of the full nature, extent, and value of the cooperation provided by the defendant. *Id*. The undersigned attorneys have complied with this obligation. Based upon the information provided to the Departure Committee, and as presented here to the Court, the Committee found that the defendant did not provide substantial assistance in the investigation or prosecution of another person or entity and did not recommend a downward departure. Accordingly, the government is <u>not</u> moving for a downward departure for defendant.

## IV. **RECOMMENDATION**

The defendant used her position with the DCPS to accept bribes and deprive DCPS, as well as the citizens of this community, of her honest services in that position. By accepting these bribes, defendant deprived DCPS, as well as the District's citizens, of having the assurance that it was receiving the best services and goods for its students in return for its limited funds. As defendant knew, some of the goods for which Wiggins was paid were never delivered and some of the services for which he was paid were substandard. As to other services, it is hard to know whether DCPS got the benefit of the service for which it paid, or whether Wiggins would have even been given the opportunity to do the work absent the money he paid to the DCPS officials. Defendant's conduct in this matter, with its resulting intangible and tangible harms to the District of Columbia citizens and an important governmental agency, DCPS, is serious conduct that needs to be adequately punished. Moreover, beyond the harm to the District's citizens and government, the corruption of a public service institution itself is a wrong. Corruption by public officials in the District of Columbia, at whatever level, is a serious and, unfortunately, too often recurring matter. Corruption erodes the public confidence in government officials, employees and institutions. Citizens will trust, accept and comply with the requirements of a system they believe operates fairly, but not one that they do not believe does so. Moreover, although most public servants are honest and hard working, their morale is hurt by those who engage in corruption and their reputations suffer.

On the other hand, to her credit, once an indictment had been returned in this matter, defendant quickly thereafter agreed to plead guilty.

Accordingly, the government requests a three-level adjustment under the United States Sentencing Guidelines for defendant's acceptance of responsibility. As to the resulting guidelines

range of 18 to 24 months, the government requests that the Court sentence defendant within the range, but defers to the Court as to the appropriate sentence within that range. *See* United States v. Dorcely, 454 F.3d 366, 376 (D.C.Cir. July 21, 2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness"). Defendant, however, does not appear to have the ability to pay a fine. PSR, at page 17, ¶ 81.

        Respectfully Submitted,

        KENNETH L. WAINSTEIN
        UNITED STATES ATTORNEY
        D.C. Bar Number 451058

By:    / s /
_____
JULIEANNE HIMELSTEIN
D.C. Bar # 417136
DANIEL P. BUTLER
D.C. Bar # 417718
ASSISTANT U.S. ATTORNEYS
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-8203 and (202) 353-9431
Julieanne.Himelstein@USDOJ.Gov
Daniel.Butler@USDOJ.Gov